FILED

2026 Jun-05  AM 10:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**
**CIVIL ACTION NO.  _____**

**A.S.** [1]                                                                                                      **PLAINTIFF**

**v.**

**UNITED STATES OF AMERICA and**
**CORRECTIONS OFFICER FELIX WILDER**                          **DEFENDANTS**

_____

### <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

_____

Plaintiff, A.S., was sexually assaulted and battered while incarcerated at the low-security federal prison in Aliceville, Alabama, known as the Federal Correctional Institution Aliceville (hereinafter "FCI Aliceville").  By and through her attorneys, she brings claims based upon the Eighth Amendment to the United States Constitution pursuant to the legal standards set forth in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2D 619 (1971), and based upon the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. § 2671, *et seq.,*  28 U.S.C. § 1983, *et seq.,* and/or other applicable law.   For her complaint against Defendants, Plaintiff states as follows:

### <u>PARTIES</u>

1.  Plaintiff, A.S., was at all times relevant to this complaint in the custody of the Federal Bureau of Prisons (hereinafter "BOP"), including FCI Aliceville, which is the prison

---

[1] These initials are pseudonyms used to protect the subject's identity for personal safety reasons. This person has legitimate fears of retaliation from correctional officials and/or present or former inmates for making public allegations regarding correctional officers.

facility located within the Northern District of Alabama where the sexual assault described herein occurred.

2.  Defendant, United States of America, is a sovereign entity named herein pursuant to the Federal Tort Claims Act and oversees the BOP, which is responsible for the custody and care of federal inmates.

3.  FCI Aliceville wardens, associate wardens, executive staff, department heads, supervisors, counselors, professional service providers and prison management (hereinafter "Management Team") were grossly negligent in the management, supervision, and retention of male corrections officers at FCI Aliceville resulting in the sexual harassment and abuse of female inmates.

4.  Defendant, Corrections Officer Felix Wilder, was at all times relevant to this complaint employed by the BOP as a correctional officer working at FCI Aliceville in Alabama.

5.  Defendant Wilder was at all times relevant to this complaint acting under color of law and within the scope of his employment with Defendant, United States of America, and the BOP.

**<u>JURISDICTION AND VENUE</u>**

6.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1346 (b)(1) as the claims in this case are brought against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* and against the individual Defendant under the Eighth Amendment to the United States Constitution, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 406 U.S. 388 (1971).

7.      Plaintiff mailed an Administrative Claim (SF-Form 95) to the Regional Counsel for the Federal Bureau of Prison's Southeast Regional Office.  The claim was accepted for filing on June 6, 2025, and the six (6) month time period for a response or denial has passed. Her claim is now considered denied and she has exhausted all obligatory administrative remedies, and this matter is ripe for the filing of this civil action.

8.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1402(b), as some or all of the events upon which this action is based occurred in the Northern District of Alabama.

## FEDERAL BUREAU OF PRISONS "BOP"

9.      The BOP is a United States federal law enforcement agency responsible for the custody of individuals who have violated federal laws.  The BOP's stated mission is to protect public safety by ensuring that federal offenders serve their sentences of imprisonment in facilities that are safe, humane, cost efficient and appropriately secure.

10.      Contrary to its mission statement, the BOP has created and maintained a sanctuary for male correctional officers to sexually assault and abuse female inmates. The sexual abuse of female prisoners in the care and custody of the BOP is epidemic and largely unchecked as a result of cultural tolerance, orchestrated cover-ups, and organizational reprisals of inmates brave enough to report sex abuse.

## PRISON RAPE ELIMINATION ACT

11.      The Prison Rape Elimination Act (hereinafter "PREA") was signed into law by President Bush in 2003 and applies to all federal facilities managed by the BOP. P.L. 108-79.  PREA's goal is to deter the sexual assault of prisoners and to curb prison rape through a zero-tolerance policy.

12.    Because female inmates are fully dependent on the correctional officers for basic necessities and privileges, all sexual contact, with or without the consent of the inmate, is classified as abuse.   Sexual abuse and sexual harassment are defined in section 115.6 of the Act as follows:

Sexual abuse of an inmate, detainee, or resident by staff member, contractor, or volunteer includes any of the following acts, with or without consent of the inmate, detainee, or resident:

(1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;

(2) Contact between the mouth and the penis, vulva, or anus;

(3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(4) Penetration of the anal or genital opening, however slight, by hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(5) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in activities described in paragraphs (1)-(5) of this section;

(7) Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, detainee, or resident, and

(8) Voyeurism by a staff member, contractor, or volunteer.

Sexual harassment includes:

(1) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, detainee, or resident directed toward another; and

(2) Repeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including demeaning

4

references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

13.     As mandated by PREA, the BOP conducts annual PREA audits ("Audits") at each federal prison facility.

14.     PREA audits assess whether an institution is compliant with the 45 PREA standards of reviewing policies and practices within the institution, interviewing employees and prisoners, and reviewing documentation from the audit period, such as prisoner complaints of sexual abuse or harassment.

### FCI ALICEVILLE

15.     FCI Aliceville is a federal prison facility operated by the BOP through the United States Department of Justice.

16.     Female inmates at FCI Aliceville are divided into distinct housing units with dormitory style cubicles for each inmate.  Many inmates are afforded work, educational and vocational privileges within complexes.  Inmates are subject to daily "counts" but are given some basic freedoms to move and work on the complex.

17.     FCI Aliceville employs correctional officers, facilities staff and management to oversee and operate the prison facility.  The correctional officers are trained, managed, overseen and paid by the BOP through the United States Department of Justice.  The correctional officers are federal employees subjecting the United States of America to liability for improper actions committed within the course and scope of their employment, under color of federal law, or in violation of specific federal statutes.

18.     Defendant Wilder was a suspected and known sexual predator to the Management Team and the Prison Investigative Agencies.  Upon information and belief, Defendant Wilder had been investigated on numerous occasions for sex crimes against

female inmates.  The Management Team and Prison Investigative Agencies were well aware of the female inmates' reluctance to come forward with information on sexual abuse for fear of reprisal, including, but not limited to, transfer to a different facility, disciplinary segregation, loss of early release rights, detrimental write-ups, loss of work privileges, and interference with vocational skills programs.

19.   In fact, the Management Team instituted a policy whereby inmates complaining of mistreatment by prison officials were removed to a local county detention center or a special housing unit.  This relocation policy intentionally suppressed complaints of misconduct as the county facilities are higher levels of security and do not permit work details or vocational training.

20.   Despite the known issue of abuse, the Management Team granted Defendant Wilder unrestricted and unsupervised contact with Plaintiff, including work details, which granted him one-on-one access to her.

**STANDARDS OF EMPLOYEE CONDUCT**

21.   Many of the BOP's policies are contained in documents titled "program statements" which set forth rules and procedures that all BOP employees are required to follow.

22.   Program Statement 3420.11 sets out the duties and responsibilities of all BOP employees.  It requires that employees:

> "[A]s soon as practicable (but no later than 24 hours) report to their CEO (or other appropriate authority such as the Office of Internal Affairs or the Office of the Inspector General) any violation, appearance of a violation, or attempted violation of these Standards or of any law, rule, or regulation.  Every employee is required to immediately report to management any act or omission by any person that could result in a breach of institution security.  Failure by employees to follow these regulations and policy or any other Bureau policy or relevant regulation(s) could result in disciplinary action, up to and including removal."

6

23.     Program Statement 3420.11 (Standards of Employee Conduct) mandates that "[n]o employee shall engage in, or allow another person to engage in, sexual behavior with an inmate.  There is never any such thing as consensual sex between staff and inmates."

24.     Program Statement 3420.11 states that BOP employees are subject to administrative action, up to and including removal, for any inappropriate contact, sexual behavior, or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime.  Physical contact is not required to subject an employee to sanctions for misconduct of a sexual nature.

25.     Program Statement 3420.11 goes on to state that:

"Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where force is used or threatened. Sexual conduct is defined as the intentional touching of the genitalia, anus, groin, breast, inner thigh, or buttocks with the intent to abuse, humiliate, harass, degrade, arouse, or gratify the sexual desire of any person.  All allegations of sexual abuse will be thoroughly investigated and, when appropriate, referred to authorities for prosecution."

26.     Each new BOP employee, contractor, and volunteer must receive and sign a form acknowledging receipt of Program Statement 3420.11.

27.     Program Statement 5324.12 (Sexually Abusive Behavior Prevention and Intervention Program) concerning the prevention of, and intervention upon sexually abusive behavior, implements zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and provides guidelines to address prohibited and/or illegal sexually abusive behavior.

28.     Program Statement 5324.12 is the controlling BOP policy addressing the prevention of, and intervention upon, sexually abusive behavior.  It is disseminated

agency-wide and applies to all facilities operated by the BOP and every staff member working within each correctional facility.

29.    Program Statement 5324.12 lays out duties and responsibilities with respect to conduct for all BOP employees, and mandates particular staff and agency reporting duties with respect to sexually abusive behavior, including concerning incidents or possible incidents of sexual abuse or sexual harassment.  It mandates that "[a]ll staff must report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant, or where appropriate, in accordance with the Program Statement 3420.11." This mandated duty to report falls outside of the discretionary-function exception to the FTCA.

30.    BOP policy requires the training of all employees who may have contact with inmates on how to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures.

31.    Inmates, employees, and the public may file a complaint at the BOP facility where an incident of sexual abuse occurred; through the BOP's Office of Internal Affairs ("OIA"); or with the Department of Justice Office of Inspector General ("OIG").  In accordance with the agency's own Standards of Employee Conduct, BOP employees must report any violation of those standards, or any rule or law within one business day of the incident to their Chief Executive Officer ("CEO"), OIA, or the OIG.  Decisions regarding disciplinary action in cases where the allegations are sustained are managed by the BOP's Human Resources Management ("HRM") and BOP's Office of General Counsel.

**SEXUAL HARASSMENT AND RAPE OF PLAINTIFF**

8

32. As a federal inmate, Plaintiff was committed to the United States government's care, custody, and control and while in such custody, federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide for the protection … of all persons charged with or convicted of an offense against the United States." 18 U.S.C. § 4042(a)(2)-(3).

33. In October 2023, Defendant Wilder instructed Plaintiff to clean the staff lounge. After confirming that no one else was around, Defendant Wilder began to grope Plaintiff without her permission and expressed his interest in her.

34. In November 2023, Defendant Wilder directed Plaintiff to go into a cleaning closet with him, where he forcefully engaged in vaginal and unprotected sexual intercourse with her. These "meetings" continued monthly up and through September 2024.

35. Officer Wilder groomed Plaintiff in such a way as to create an unwanted sexual relationship with her. As her superior, Defendant Wilder took advantage of Plaintiff by extending preferential treatment to her. Feeling like she had no other option, Plaintiff unwillingly submitted to Defendant Wilder's commands. Defendant Wilder sexually assaulted and penetrated Plaintiff—both orally and vaginally—on more than 20 separate occasions in the staff bathroom and the cleaning closet. On every occasion, the sexual encounters were without protection and Defendant Wilder always ejaculated inside of Plaintiff despite her protest and despite her not being on birth control.

36. Plaintiff did not and was unable to consent or give permission to Defendant Wilder to touch or engage in any sexual activity, nor could she have, as a matter of law.

9

As a result of the sexual assault and harassment from Defendant Wilder, Plaintiff has suffered extensive psychological trauma, depression, pain and suffering, physical trauma, anxiety, and humiliation.   Plaintiff demands compensation from the United States of America for the abuse in an amount to be determined at trial.

### COUNT I – CLAIMS AGAINST WILDER PURSUANT TO THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

37.    Plaintiff re-alleges and incorporates by reference all of the preceding allegations as if set forth herein.

38.    As an inmate in the custody of the BOP, Plaintiff had a clearly established right under the Eighth Amendment to the United Sates Constitution not to be subjected to cruel and unusual punishment while incarcerated.

39.    Defendant Wilder's actions constitute cruel and unusual punishment in the form of sexual abuse, assault, battery and rape.

40.    Plaintiff was not sentenced with a prescription for any form of sexual abuse; it is not a legitimate form of punishment.  It is not an ancillary component of any prison sentence, and it serves no legitimate penal purpose.

41.    All of Defendant Wilder's acts and omissions were taken while acting under color of law and in the scope and course of his employment as a correctional officer for the BOP.

42.    Defendant Wilder, failed in his duty to provide Plaintiff with constitutionally safe and secure conditions or confinement.

43.    Defendant Wilder acted intentionally, maliciously, oppressively and/or with gross negligence against Plaintiff's constitutional rights.

10

44.    As a direct and proximate result of Defendant Wilder's misconduct, Plaintiff was subjected to physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently, as well as retaliation.

45.    Defendant Wilder's conduct was of such a quality and nature as to warrant his liability for punitive damages, in accordance with applicable law.

46.    Plaintiff is also entitled to recover from Defendants all compensatory damages recognized by applicable law.

## COUNT II – CLAIMS AGAINST THE UNITED STATES OF AMERICA UNDER THE FTCA: NEGLIGENCE

47.    Plaintiff re-alleges and incorporates by reference all of the preceding allegations as if set forth herein.

48.    Defendant, United States of America, is responsible for the oversight of its employees, which includes officers and staff at federal correctional institutions, including FCI Aliceville.

49.    Pursuant to the Federal Tort Claims Act, the United States is liable for damages caused by the neglect or wrongful acts of its employees acting within the scope of their employment, under circumstances where the United States, if a private person, would be liable in accordance with the laws of the State of Alabama.

50.    Federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide for the protection … of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(A)(2)-(3).

11

51.     Defendant, United States of America, and the supervisors and employees of FCI Aliceville have a duty to provide inmates, being in their custody, with a safe and secure environment, free of dangers, including the dangers of sexual harassment and sexual assault.

52.     As a premises owner/operator, the United States has a duty to provide inmates with a reasonably safe place, which specifically includes a place reasonably free and safe from known or suspected sexual abusers and rapists and/or individuals who pose a foreseeable risk of sexual abuse or rape.

53.     Correctional officers and other prison officials and representatives at FCI Aliceville have a non-discretionary duty, pursuant to PREA, to enforce a policy of "zero-tolerance" with respect to sexual abuse of inmates by staff.

54.     Correctional officers and other prison officials and representatives at FCI Aliceville have a duty to protect inmates from harm caused by correctional officers and other prison officials and representatives, specifically including Defendant Wilder.

55.     Correctional officers and other prison officials and representatives at FCI Aliceville have a duty to disallow or sufficiently monitor and supervise one-on-one interactions between inmates and prison representatives such as between Defendant Wilder and Plaintiff.

56.     Correctional officers and other prison officials and representatives at FCI Aliceville have a duty to house inmates in a safe and secure manner.

57.     FCI Aliceville and the Management Team were aware or should have been aware of Defendant Wilder's propensity to sexually harass Plaintiff and other inmates prior to the rape described herein.  Notwithstanding prior allegations and concerns of

sexual harassment, Defendant Wilder was still permitted unsupervised access to Plaintiff and other inmates.

58.    Pursuant to 28 C.F.R. § 115.31, the Management Team and the Prison Investigative Agencies have a non-discretionary duty to train employees on how to prevent sexual abuse and sexual harassment, the right of inmates to be free from sexual abuse and harassment, the dynamics of sexual abuse and harassment, the common reactions of sexual abuse and harassment victims, and how to detect and respond to signs of threatened and actual sexual abuse and to ensure that such training was properly followed.  The Management Team and the Prison Investigative Agencies breached this duty, and such breach was a proximate cause of the injuries and damages alleged herein.

59.    Pursuant to 28 C.F.R. §§ 115.31 and 115.33, the Management Team and the Prison Investigative Agencies have a non-discretionary duty to train employees and advise inmates of their right to be free from retaliation for reporting incidents of sexual harassment and sexual abuse by BOP employees and representatives and to ensure that such training was properly followed.

60.    Pursuant to 28 C.F.R. §115.17, the Management Team and the Prison Investigative Agencies have non-discretionary duties with respect to the hiring, promotion, and periodic review of their employees.  Those non-discretionary duties include duties to consider any incidents of sexual harassment, whether the employee has engaged in sexual abuse, and whether the employee has been convicted or civilly adjudicated of sexual abuse.  Upon information and belief, the Management Team and the Prison Investigative Agencies failed to perform their non-discretionary duties with respect to

13

Defendant Wilder or failed to appropriately and responsively act if they did perform such duties.

61.    BOP supervisory officials have a duty to monitor, supervise, train, and discipline employees/representatives at FCI Aliceville, specifically including Defendant Wiler, in order to ensure that staff/representatives properly perform their PREA-mandated duties so that inmates' Eighth Amendment rights are not violated.

62.    Prison officials at FPC Alderson knew or should have known that Defendant Wilder should not have been permitted to have unsupervised access to inmates, including Plaintiff to whom he posed an excessive and unreasonable risk.

63.    The Management Team and the Prison Investigative Agencies breached their duties to Plaintiff under PREA as follows:

- Section 115.11 failing to enforce zero tolerance policy;

- Section 115.13 failing to supervise and monitor (video surveillance) one-on-one inmate/officer contact;

- Section 115.15 permitting improper cross-gender pat downs;

- Section 115.17 hiring, promoting, and retaining officers who "may" have had improper sexual contact;

- Section 115.43 punishing sex victims with involuntary segregated housing, loss of privileges, and work permits;

- Section 115.61 failing to report suspicion of sexual abuse;

- Section 115.67 failing to protect inmates from retaliation after reporting abuse;

- Section 115.76 failing to discipline staff for sexual misconduct

64.    Through the conduct of Defendant Wilder and other BOP employees and

representatives, all of the duties encompassed herein were breached, and as a proximate result Plaintiff sustained injuries and damages.

65.    As a direct and proximate result of these breaches of duties, Plaintiff suffered personal injuries associated with and arising from multiple sexual assaults and rape including, but not limited to, severe physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently, as well as retaliation.

## COUNT III – CLAIMS AGAINST WILDER FOR VIOLATIONS OF THE LAWS AND CONSTITUTION OF ALABAMA AND THE UNITED STATES IN VIOLATION OF 42 U.S.C. § 1983

66.    Plaintiff re-alleges and incorporates by reference all the preceding allegations as if set forth herein.

67.    The laws and constitutions of the State of Alabama and the United States of America, including, but not limited to, 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution, include provisions prohibiting cruel and unusual punishment.

68.    As described above, Defendant Wilder has violated clearly established laws of the State of Alabama and the United States of America in his actions toward Plaintiff.

69.    Defendant Wilder was acting under color of law as described above during his actions.

70.    Because the actions of Defendant Wilder involved a reckless or callous indifference to the federally protected rights of Plaintiff, an award of punitive damages is appropriate to the fullest extent permitted by law. *Smith v. Wade,* 461 U.S. 30 (1983).

71.    Defendant Wilder was acting in his capacity as a prison official, under color of law, when he committed these acts in violation of clearly established laws of the State of Alabama and the United States of America as described above and including, but not limited to, the Eighth Amendment to the United States Constitution.  Accordingly, under 42 U.S.C. § 1983 and similar doctrines adopted by the State of Alabama, Defendant Wilder is liable for the damages resulting from Plaintiff's injuries and pain and suffering.

72.    Defendant Wilder deprived Plaintiff of significant legal rights in violation of 28 U.S.C. § 1983 as described in the factual assertions mentioned above.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, A.S., requests that this Honorable Court grant her the following relief:

1.  Any and all compensatory and special damages;

2.  Punitive damages;

3.  A jury trial on all claims triable by jury;

4.  Reasonable attorneys' fees and costs in accordance with applicable law, including costs incurred in this action and reasonable attorney fees under 42 U.S.C. § 1988 and in accordance with 42 U.S.C. § 1983; and attorney fees and costs as allowed by any and all other applicable legal authority;

5.  Pre-judgment and post-judgment interest as allowed by law; and

6.  Such other and further relief that this Court deems just and proper.

Respectfully submitted this the 4th day of June, 2026.

/s/ Rebekah McKinney
Rebekah McKinney (ASB-3137-T64J)
Watson McKinney, LLP
203 Greene Street

16

Huntsville, Alabama 35801
(256) 536-7423 telephone
(256) 536-2689 fax
mckinney@watsonmckinney.com

and

*/s/   John W. Oakley, II*  (pro hac vice motion to be filed)
Oakley, & Oakley, LLC
111 Church Street, #300
Lexington, Kentucky 40507
(859) 254-4035
jay@oakleylawky.com

and

*/s/  Noel Caldwell* (pro hac vice motion to be filed)
Nash Marshall , PLLC
129 West Short Street
Lexington, Kentucky 40507
(859) 254-3232
ncaldwell@nashmarshall.com

*Counsel for Plaintiff A.S.*

**Defendant Felix Wilder to be served by certified mail at:**
Felix Wilder
224 Crescent Road
Aliceville, Alabama 35442

**United States of America to be served by certified mail at:**
United States of America
Phillip W. Williams Jr., United States Attorney
Birmingham Main Office
Civil Division, Process Clerk
1801 4th Avenue North
Birmingham, Alabama 35203

United States of America
U.S. Department of Justice
Attorney General of the United States, Todd Blanche
Civil Division, Process
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

17